## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED GALVANIZING INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0551 |
| | § | |
| IMPERIAL ZINC CORP., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This diversity suit arises from a contract to purchase a load of remelt zinc. The plaintiff, United Galvanizing, Inc., a Texas corporation, was the purchaser; defendant Richker Metals, Inc., a California corporation, was the seller; and defendant Imperial Zinc Corp., an Illinois corporation, was the manufacturer. United Galvanizing alleges that the zinc was not of the high-grade quality it had specified. United Galvanizing asserts state-law claims that include breach of contract, breach of warranty, and violations of the Texas Deceptive Trade Practices Act.

Imperial Zinc has filed a motion to dismiss for lack of personal jurisdiction. (Docket Entry No. 13). United Galvanizing has responded, (Docket Entry No. 15), and Imperial Zinc has replied, (Docket Entry No. 25). United Galvanizing moved for jurisdictional discovery and an extension of time to respond to Imperial Zinc's reply, (Docket Entry No. 27), which Imperial Zinc opposes, (Docket Entry No. 29).

Based on a careful review of the motions, responses, and reply; the parties' submissions; and the applicable law; this court denies United Galvanizing's motion for jurisdictional discovery and extension of time to respond and grants Imperial Zinc's motion to dismiss for lack of personal jurisdiction. The reasons for these rulings are explained below.

## I.    Background

Imperial Zinc is an Illinois corporation with its principal place of business in Chicago, Illinois. (Docket Entry No. 14, Ex. A-1). Imperial Zinc has been in business for 14 years, producing zinc alloys and zinc anodes. Imperial Zinc's only contact with Texas occurred in 2007, when it entered into three contracts to sell zinc materials it produced in Illinois to an Ohio corporation with a Texas division. (Docket Entry No. 14, Ex. A, Affidavit of David Kozin, Imperial Zinc's president, at ¶ 4). An Imperial Zinc vice-president made two trips, 11 months apart, from Illinois to the purchaser's Texas plant. (*Id.*). Imperial Zinc's revenue from these contracts was less than one percent of its 2007 revenue. (*Id.*).

United Galvanizing, based in Houston, Texas, uses zinc in its galvanizing process. On June 25, 2007, United Galvanizing's purchasing manager, Kerry Henrichsen, sent Richker's Albert Vasquez, Vice President of Sales, an e-mail asking that Richker "ship United a load of zinc metal we discussed at lunch the other day." (Docket Entry No. 11, Ex. A). United Galvanizing asserts that the zinc discussed was "prime western" grade. Vasquez responded that his supplier was gone for the day, but that he would "call am tomorrow and get a ship date for [Henrichsen]." (*Id.*).

2

On June 26, 2007, Richker entered into a contract with Imperial Zinc to purchase one truck load (44,761 pounds) of remelt high-grade zinc sows at $1.4860/pound.  (Docket Entry No. 14, Ex. A-2).  The contract stated that any disputes between Imperial and Richker would be litigated in Chicago, Illinois.  (*Id.*).  On June 27, 2007, Imperial Zinc produced the remelt zinc for Richker in Illinois and invoiced Richker on the same date.  (*Id.*).  Richker had the goods shipped by a carrier of its choosing to California.  (*Id.*, Ex. A-3).

The zinc arrived at Richker's place of business in California.  Richker shipped the zinc to Houston, Texas where it arrived at United Galvanizing's place of business on June 29, 2007.  According to United Galvanizing,  soon after delivery it became apparent that the zinc was not "prime western" grade.  United Galvanizing asserts that subsequent testing of part of the load confirmed the deficient quality.  On June 30, 2007, United Galvanizing informed Richker that it was rejecting the zinc.  Richker arranged to pick up the remaining zinc on July 19, 2007.

United Galvanizing alleges that after it rejected the zinc, Richker agreed that no payment was due.  Richker denies this allegation and asserts that it repeatedly requested payment.  In October 2007, United Galvanizing sent a Richker a letter demanding payment for the costs and consequential damages caused by the nonconforming zinc.  (Docket Entry No. 11, Ex. B).  On October 19, 2007, Richker sued United Galvanizing in California state court.  The California court granted United Galvanizing's motion to dismiss for lack of

personal jurisdiction.  United Galvanizing filed this suit on February 19, 2008, alleging breach of contract, violations of the Texas Deceptive Trade Practices Act, and seeking damages and attorneys' fees.  (Docket Entry No. 1).

On April 21, 2008, Imperial Zinc moved to dismiss for lack of personal jurisdiction and for failure to state a claim.  (Docket Entry No. 6).  On April 23, 2008, United Galvanizing filed its first amended complaint to "clarify and add additional causes of action under F.R.C.P. 15(a)."  (Docket Entry No. 11).  The amended complaint asserts claims for breach of contract, attorneys' fees, negligence, negligent misrepresentation, deceptive trade practices, and breach of implied warranty of merchantability against Richker and breach of warranty of merchantability against Imperial Zinc.  (*Id.*).  Richker filed an answer to the first amended complaint and a counterclaim against United Galvanizing on May 13, 2008.  (Docket Entry No. 17).

Imperial Zinc filed its second motion to dismiss for lack of personal jurisdiction on May 8, 2008, arguing that it lacks the necessary contacts with Texas.  (Docket Entry No. 13).  The issues are whether, based on the present record, Imperial Zinc should be dismissed for lack of specific personal jurisdiction and whether to allow United Galvanizing jurisdictional discovery against Imperial Zinc and an extension of time to respond to Imperial Zinc's reply.

## II.   The Legal Standard for Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercise of such jurisdiction by the forum state is consistent with due

process under the United States Constitution. *Delgado v. Reef Resort, Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *see* TEX. CIV. PRAC. AND REM. CODE ANN. § 17.041–.045; *see also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant. That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Johnston*, 523 F.3d at 609 (quoting *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). A court's exercise of specific jurisdiction is appropriate only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 446 U.S. 408, 414 n.8 (1984); *Religious Tech. Ctr.*, 339 F.3d at 375; *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Const.,* 85 F.3d at 205; *Helicopteros Nacionales*, 466 U.S. at 414 n.8. Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 475 (1985). A court may exercise specific jurisdiction when: (1) the nonresident defendant purposely availed itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Freudensprung v. Offshore Tech. Serv.*, 379 F.3d 327 (5th Cir. 2004) (citations omitted). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir.

6

1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414-15; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir.1990). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir.1985) (additional citations omitted)).

In this case, United Galvanizing "concedes that Imperial Zinc's actions do not subject it to general jurisdiction." (Docket Entry No. 15). The issue is whether specific personal jurisdiction is present.

### III.    Analysis

### A.    The First Amended Complaint

Imperial Zinc first argues that United Galvanizing's first amended complaint is not properly before this court because it was filed without leave of court after Imperial Zinc had moved to dismiss.  Imperial Zinc asks this court to strike the amended complaint and consider its motion to dismiss as directed against United Galvanizing's initial complaint.

Rule 15 permits a party to "amend its pleading once as a matter of course before being served with a responsive pleading."  FED. R. CIV. P. 15(a)(1).  Imperial Zinc asserts that its motion to dismiss was a responsive pleading, and that United Galvanizing was required to seek leave of court to file an amended complaint.  *See* FED. R. CIV. P. 15(a)(2).  Fifth Circuit "precedent is clear that a motion to dismiss is not considered a 'responsive pleading' that would cut off the right to amend a pleading as a matter of course."  *Crawford v. United States Dep't of Homeland Security*, 245 Fed. Appx. 369, 381 (5th Cir. 2007) (citing *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002)).  Because neither defendant served an answer to the complaint before April 23, 2008, United Galvanizing was entitled to amend its complaint on that date without seeking the court's leave.[1]

---

[1]  A proposed amendment to Rule 15(a)(1) will address this situation.  The proposed amended rule states that "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  As amended, the rule eliminates the distinction between a responsive pleading and a motion to dismiss for purposes of Rule 15. The right to amend once as a matter of course is no longer terminated by service of a responsive pleading, but a party has 21 days in which to amend after service of the responsive pleading.  The right to amend a pleading once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f). The amendment will become effective December 1, 2009 if approved by the Supreme Court and not disapproved by Congress.

In its first amended complaint, United Galvanizing alleges:

> Defendant Imperial Zinc Corp manufactured the zinc at issue herein which was sold to Plaintiff through Defendant Imperial Zinc Corp's broker and/or distributor, Defendant Richker Metals, who served as Defendant Imperial Zinc's sales agent in the forum State.

(Docket Entry No. 11, at ¶ 42). This is the only jurisdictional allegation about Imperial Zinc in the amended complaint. United Galvanizing attached to the amended complaint the e-mail between Henrichsen and Vasquez by which United Galvanizing contracted to purchase the remelt zinc from Richker and the demand letter from United Galvanizing to Richker. (Docket Entry No. 11, Exs. A, B). Neither document mentions Imperial Zinc.

### B.     The Motion to Dismiss

United Galvanizing asserts that its first amended complaint and attached exhibits make a *prima facie* showing of specific personal jurisdiction. United Galvanizing asserts that it has made a *prima facie* showing that Richker was acting as Imperial Zinc's agent so that Richker's contacts are imputed to Imperial Zinc. United Galvanzing also argues that personal jurisdiction against Imperial Zinc is proper under the stream-of-commerce theory of minimum contacts. In response to Imperial Zinc's second motion to dismiss, United Galvanizing asserts that "Imperial not only could have foreseen that its zinc would be delivered and used in Texas but knew that they were going to be used in Texas as a positive fact." (Docket Entry No. 15, at 1). United Galvanizing claims that "[i]t is undisputed that" Imperial "consented" to shipment to Texas; Imperial "knew as a fact that the products were going to be delivered to a specific user in Houston, Texas–the Plaintiff," and that "Imperial

9

Zinc knowingly and intentionally marketed its zinc (through its brokers) with the knowledge that they were serving a national and even global market." (*Id.*, at 2, 7, 8).

Imperial Zinc argues that the amended complaint does not allege that Imperial Zinc knew or could have reasonably foreseen that the zinc was intended for sale to a Texas company or would be sold to a Texas company. Imperial Zinc argues that the record shows no basis for specific personal jurisdiction and instead defeats the arguments that Richker is Imperial Zinc's agent and that a stream-of-commerce basis for jurisdiction is present.

In support of its motion to dismiss, Imperial Zinc has submitted an affidavit by its president, David Kozin. (Docket Entry No. 14, Ex. A). Kozin states:

> At the time Imperial contracted to sell and manufacture zinc goods for Richker Metals, I did not know who Richker was selling the goods to. Until this dispute, I had never heard of United Galvanizing, Inc. Richker Metals, Inc. has never been Imperial's sales agent, broker, or distributor in Texas or in any other state. Imperial has no agents for sales or other purposes in the State of Texas.

(*Id.*). Imperial Zinc also submits the contracts for the sale of the zinc at issue.

The record shows that there were two separate sales contracts for the zinc. The first is the sales contract between Richker and Imperial Zinc. (Docket Entry No. 14, Ex. A-2). The second contract is an e-mail from United Galvanizing's purchasing manager, Kerry Henrichsen, to Richker's Albert Vasquez, vice-president of sales, asking that Richker "ship United a load of zinc metal we discussed at lunch the other day," (Docket Entry No. 11, Ex. A), followed by an e-mail frm Vasquez stating that his supplier was gone for the day, but that he would "call am tomorrow and get a ship date for [Henrichsen]." (*Id.*).

10

The sales contract between Richker and Imperial Zinc does not mention a subsequent sale by Richker, either to United Galvanizing or any other company.  (Docket Entry No. 14, Ex. A-2).  Neither the invoice Imperial Zinc sent to Richker nor the bill of lading for the shipment from Illinois to California mention United Galvanizing or Texas.  (Docket Entry No. 14, Ex. A-3).  There is no indication of any agency or broker relationship between Richker and Imperial Zinc.  There is no evidence that Imperial Zinc was aware that Richker had a contract to ship the zinc to Texas.  There is no evidence that Imperial Zinc knew or could reasonably foresee that Richker would resell the zinc to a Texas company.    United Galvanizing responded to the second motion to dismiss with conclusory assertions that "Imperial Zinc must have accepted and ratified Richker Metals' efforts"; Imperial "ostensibly consented to Richker Metals' brokering of the sale"; and that Imperial Zinc knew the zinc would be shipped to Texas.  (Docket Entry No. 15, at 7, 9).  United Galvanizing has not identified or submitted evidence to support these assertions or the bare and conclusory jurisdictional allegation contained in the first amended complaint.

The "plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson Ceco-Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also Hartford Fire Ins. Co. v. Hutchinson*, 2006 WL 903715, at *2 (S.D. Tex. Apr. 6, 2006) ("A plaintiff may present a prima facie case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction."). United Galvanizing has not presented or identified such evidence.

11

Its conclusory allegations are insufficient.  *See Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir.2001).  In *Panda Brandywine*, the Fifth Circuit upheld a district court's decision to exclude uncontroverted assertions offered to show personal jurisdiction over a nonresident defendant because those assertions were conclusory.  253 F.3d at 868-69.  The only evidence offered to establish personal jurisdiction was a state-court petition alleging "on information and belief" that the defendant knew that the plaintiffs were Texas residents and knew that the defendant's actions would harm the plaintiffs in Texas. *Id.* at 869.  The district court found the allegations too conclusory to consider in the jurisdictional analysis.  *See also Southern Bleacher Co., Inc. v. Husco, Inc.*, 2001 WL 497772, at *6 (N.D. Tex. May 7, 2001) (concluding that plaintiff's bald assertions and conclusory allegations in its pleadings were insufficient to establish a *prima facie* case of jurisdiction).  Although United Galvanizing need only make a *prima facie* showing of jurisdiction over Imperial Zinc, its conclusory assertions are insufficient for a *prima facie* showing of either an agency/broker relationship between Imperial Zinc and Richker or of jurisdiction based on stream of commerce.  The record does not present a factual dispute that would be resolved in United Galvanizing's favor.

The evidence in the record does not show any agency or broker relationship between Richker and Imperial Zinc.  There is a single contract between Richker and Imperial Zinc. The president of Imperial Zinc testified in his affidavit that "Richker Metals, Inc. has never been Imperial's sales agent, broker, or distributor in Texas or in any other state."  Imperial has no agents for sales or other purposes in the State of Texas."  (Docket Entry No. 14, Ex.

12

A at ¶ 25).

The stream-of-commerce theory, United Galvanizing's second proffered basis for personal jurisdiction over Imperial Zinc, does not support a *prima facie* showing because the record shows that Imperial Zinc neither knew nor could have reasonably foreseen that Richker would ship the zinc from California to Texas.  United Galvanizing argues that under *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286 (1980), Imperial Zinc has minimum contacts with Texas.  United Galvanizing argues that "Imperial Zinc intentionally placed its product into the stream of commerce by delivering them to a shipper destined for delivery in Texas."  (Docket Entry No. 15, at 11).

In *World-Wide Volkswagen*, a product liability case, the Supreme Court addressed whether the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma constituted "minimum contacts" with Oklahoma for personal jurisdiction over the automobile wholesaler and retailer with no activities in that State.  444 U.S. at 286.  The Court held that specific personal jurisdiction in Oklahoma was not present because although foreseeability is a critical factor in the stream-of-commerce analysis, it was "not the mere likelihood that a product will find its way into the forum state." *World-Wide Volkswagen*, 444 U.S. at 297.  The Court reasoned:

> If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there; a Wisconsin seller of a defective automobile jack could be haled before a distant court for damages caused in New Jersey; or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there. Every seller of chattels would in effect appoint the chattel his

> agent for service of process.  His amenability to suit would
> travel with the chattel.

*Id.* at 296.  Rather, the touchstone is that the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Id.*

The Supreme Court revisited the stream-of-commerce theory in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987).  A plurality advocated an "awareness plus" test under which "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."  *Id.* at 112.  In the Fifth Circuit, the *Asahi* plurality opinion is not binding, leaving circuit case law law interpreting *World-Wide Volkswagen* unchanged.  *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419-21 (5th Cir. 1993).  Because a defendant who "knowingly benefits from the availability of a particular state's market for its products" should be amenable to suit in that state, the Fifth Circuit "declined to follow the suggestion of the plurality in *Asahi* . . . that some additional action on the part of the defendant, beyond foreseeability, is necessary to 'convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'"  *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Asahi*, 480 U.S. at 112).

United Galvanizing relies on *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir. 1984), to support its argument that the stream-of-commerce theory applies to support specific personal jurisdiction over Imperial Zinc.  In *Bean*, a Washington

manufacturer introduced thousands of steel castings into the stream of commerce.  Some of the castings were sold to a California corporation, which used them to manufacture cylinders. *Id.* at 1082.  A Louisiana corporation ultimately used the cylinders in constructing a dredge. In a products suit alleging negligence and strict liability for defective dredge components, the Fifth Circuit found the Washington manufacturer subject to personal jurisdiction in Louisiana.  *Id.*  United Galvanizing also relies on *Ruston Gas Turbines*, 9 F.3d at 420, in which the Fifth Circuit stated that "'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'"  *Id.* at 419 (quoting *Asahi*, 480 U.S. at 111).  United Galvanizing asserts that Imperial Zinc is subject to jurisdiction in Texas by selling to a California company because that sale placed the zinc in the stream of commerce and the zinc could end up anywhere, including Texas.

*World-Wide Volkswagen, Bean*, and *Ruston Gas Turbines* do not support stream-of-commerce specific personal jurisdiction in this case.  As explained in *World-Wide Volkswagen*, the touchstone of the stream-of-commerce analysis is that the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  444 U.S. at 297.  The Fifth Circuit has interpreted the stream-of-commerce test to require "foreseeability or awareness" that the product will enter the forum state while in the stream of commerce.  *Luv n' Care*, 438 F.3d at 470.

In *World-Wide Volkswagen*, the sale of the vehicle in New York to New Yorkers did not support personal jurisdiction over the defendants in Oklahoma, where the accident

occurred, because the defendants had conducted no activity in the forum state and could not reasonably anticipate being haled into court there.  In *Bean*, the castings manufacturer had sufficient contacts with the foreign state because there was no "attempt to limit the states in which its castings would be sold and used," and because the manufacturer "had every reason to believe that its product would be sold to a nation-wide market, that is, in any or all states." *Id.*  In *Ruston Gas Turbines*, the court held that a Texas court could exercise personal jurisdiction over a Minnesota manufacturer based on evidence that the manufacturer knew its "products were going to be delivered to a specific user in Houston, Texas."  9 F.3d at 420. That evidence consisted of affidavits showing that: (1) the defendant was aware the goods it manufactured would be shipped to the plaintiff in Texas; (2) the purchase order issued to the defendant showed that the goods were to be sold to the plaintiff in Texas; (3) the defendant delivered the goods to a common carrier for direct shipment to Texas; (4) on 211 separate occasions over a 15-year period, the defendant shipped goods directly from Minnesota to locations in Texas; (5) those 211 shipments were to 44 different entities and locations in Texas; (6) on several occasions the defendant's employees met with customers in Texas; and (7) the defendant's practice of shipping goods directly to the plaintiff in Texas continued after the transaction at issue in the lawsuit.  *Id.* at 417-18.

The Fifth Circuit's approach to the stream-of-commerce analysis is aptly illustrated by *Luv n' Care, Ltd.*, 438 F.3d at 469.  In that case, a baby-bottle manufacturer attempted to avoid personal jurisdiction in Louisiana.  The court reasoned that the manufacturer benefitted from Louisiana's market, as evidenced by the fact that it contracted to fill approximately 65

16

purchase orders for items bound for Louisiana, sent invoices to a third party confirming those orders, and derived substantial revenue from the sale of its products to Louisiana. *Id.* at 470-71. Because the manufacturer knowingly benefitted from Louisiana's market for its products, it was "only fitting that the defendant be amenable to suit in [Louisiana]." *Id.*

The relevant inquiry is whether Imperial Zinc's conduct and connections with Texas are such that it could reasonably anticipate being haled into court in Texas or, as the Fifth Circuit stated, whether there was "foreseeability or awareness" that the zinc would enter the forum state while in the stream of commerce. *Luv n' Care*, 438 F.3d at 470. Unlike the defendant in *Bean*, there is no evidence that Imperial Zinc intended to avail itself of as wide a market as possible, such that it could reasonably anticipate its product being sold in all states and being haled into court in any state, including Texas. And unlike the defendants in *Ruston Gas Turbines* and *Luv n' Care*, there is no evidence that Imperial Zinc knew or was aware that its customer would sell this load of zinc to a Texas client and ship the zinc to Texas.

A defendant should reasonably anticipate being haled into court in a state when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *World-Wide Volkswagen*, 444 U.S. at 297. The Texas Supreme Court has emphasized several essential aspects of a nonresident's "purposeful availment" of the privileges of conducting activities in the forum state necessary for personal jurisdiction in that state. "First, it is only the defendant's contacts with the forum that count," not the "'unilateral activity of another party or a third person.'" *Michiana Easy Livin' Country, Inc.*

17

*v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (internal quotations omitted). "Second, the acts relied on must be 'purposeful' rather than fortuitous. Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities. By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'" *Id.* (citations omitted).

Imperial Zinc did not purposefully avail itself of the privilege of conducting activities in Texas in connection with this load of zinc. The pleadings and the parties' submissions show that any contact Imperial Zinc had with Texas arising from the sale of zinc to Richker is fortuitous and isolated, and dependent on the unilateral activities of Richker, rather than the result of its purposeful conduct. Imperial Zinc sold the zinc to Richker, a California corporation, and shipped it by common carrier to Richker in California. The unilateral activity of Richker in selling the zinc to United Galvanizing and shipping it to Texas cannot serve as the basis for exercising personal jurisdiction over Imperial Zinc.

Nor is there evidence that Imperial Zinc knowingly benefitted from the sale of the zinc in Texas, as was the case in *Luv n' Care*. The dispute over the load of zinc does not arise from any of Imperial Zinc's activities in Texas. Other than the three unrelated contracts Imperial Zinc entered into with an Ohio corporation that had a Texas division, Imperial Zinc has had no contacts with Texas. Kozin's affidavit states that: Imperial Zinc is not licensed to do business in Texas; has no registered agent in Texas; has no office in Texas; has no telephone or fax number in Texas; maintains no business records in Texas; has no Texas

employees or agents; has never performed administrative functions in Texas; has not held a board of directors or shareholders meeting in Texas; has no shareholders, officers, and directors who are Texas residents; has never had any accounting work done in Texas; has never applied for a loan or acted as a guarantor or cosigner on a loan in Texas; has no bank account in Texas; and has never owned, leased, or rented any real or personal property in Texas.  (Docket Entry No. 14, Ex. A, Kozin Affidavit David Kozin, President of Imperial, at ¶¶ 5-17).

The record does not show that Imperial Zinc has "minimum contacts" with Texas sufficient for this court to exercise personal jurisdiction.  *See Southern Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791, 2000 WL 1910176 (5th Cir. 2000) (affirming dismissal based on lack of personal jurisdiction over an Illinois manufacturer that conferred by phone and fax with a Texas buyer, maintained a website that advertised in Texas, and placed its products in the stream of commerce knowing that three shipments of its good were destined for Texas; the defendant had no office, employees or agents in Texas, did not reach out to plaintiff to sell goods, and hired an independent carrier to pick up the goods in Illinois and ship them to Texas); *Freudensprung*, 379 F.3d at 344 ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant"); *Holt Oil & Gas*, 801 F.2d at 778 (finding no specific jurisdiction

19

over nonresident defendant when that defendant entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas).

Because Imperial Zinc lacks minimum contacts with Texas, this court need not determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Southern Copper, Inc.*, 2000 WL 1910176, at *4 (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n.20 (5th Cir. 1996) ("Because we find that the first due process condition of minimum contacts was not satisfied, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice"); *Baldwin v. Household, Int'l, Inc.*, 36 S.W.3d 273, 277 (Tex. App.–Houston [14th Dist.] 2001, no pet.) (the court would "not reach the 'fair play and substantial justice' analysis" because plaintiff failed to establish defendant's minimum contacts with Texas).

### C.    United Galvanizing's Motion for Jurisdictional Discovery

After Imperial Zinc filed a reply in support of its second motion to dismiss, United Galvanizing moved for jurisdictional discovery and an extension of time to respond. Imperial Zinc argues that United Galvanizing waived jurisdictional discovery, that the motion to dismiss should be decided on the pleadings, and that discovery would serve no purpose.

United Galvanizing seeks to depose Kozin and a Rule 30(b)(6) representative. United Galvanizing also "seeks to serve up to 25 requests for production of documents and things

20

related to jurisdiction in this action." (Docket Entry No. 28). United Galvanizing asserts that "[t]he requested discovery will allow Plaintiff to obtain the information necessary to support its jurisdictional allegations and to refute the facts alleged in the Kozin declaration." (*Id.*). In support, United Galvanizing quotes *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981).   In that case, the court stated that "[i]nsofar as the defendant's motion to dismiss raises factual issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is adequate in the context of the disputed issues and evidence." *Id.* at 414.   United Galvanizing also cites *Kelly v. Syria Shelly Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000), *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979), and *Andersen v. Sportmart*, 179 F.R.D. 236, 245 (N. D. Ind. 1998), in support of the argument that United Galvanizing should be permitted to take depositions and obtain documents from Imperial Zinc to attempt to refute the statements in Kozin's affidavit.

United Galvanizing's reliance on *Williamson*, *Grafon*, and *Andersen* is misplaced. The court in *Williamson* did not address  a motion for jurisdictional discovery into contacts with a forum state for the purpose of personal jurisdiction, but stated that as a general matter plaintiffs are entitled to discovery concerning subject-matter jurisdiction.  645 F.2d at 414. Notably, the parties in *Williamson* timely sought and conducted discovery on the juris-dictional issue before filing their briefs.   United Galvanizing did not seek jurisdictional discovery until after it had filed an amended complaint, Imperial Zinc had filed its second motion to dismiss, United Galvanizing had responded and Imperial Zinc had filed a reply.

In *Grafon*, the court did not discuss whether a plaintiff may obtain discovery to oppose a motion to dismiss, but rather found personal jurisdiction appropriate based on the plaintiff's affidavits that were filed in response to the motion to dismiss. 602 F.2d at 784. In *Andersen*, the third-party plaintiff filed a motion seeking to conduct jurisdictional discovery before the third-party defendant filed a motion to dismiss. The plaintiff also submitted specific interrogatories, production requests, and deposition notices that it wanted leave to propound. 179 F.R.D. at 243-44. The court recognized that "a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case," but must make "a prima facie showing with some competent evidence demonstrating that personal jurisdiction might exist over a defendant in order to be entitled to jurisdictional discovery." *Id.* at 241. And in *Kelly*, 213 F.3d at 849-50, the Fifth Circuit affirmed the district court's denial of jurisdictional discovery because the plaintiffs had waited six months before seeking it, despite opportunity to take the discovery earlier, did not make a formal request for discovery until after the motion to dismiss was fully briefed, and did not show what they hoped to obtain from discovery. The court stated that it would not permit a "fishing expedition" or countenance the plaintiff's lack of diligence. 213 F.3d at 849-50.

These cases do not support the jurisdictional discovery United Galvanizing seeks. Nearly two months passed between the filing of Imperial Zinc's first motion to dismiss, which included an affidavit from Kozin, and United Galvanizing's motion for jurisdictional discovery. United Galvanizing did not seek jurisdictional discovery in the Joint Discovery/Case Management Plan or in response to Imperial Zinc's first or second motion

to dismiss.  As in *Kelly*, and unlike *Williamson,* the discovery in this case was not sought until after the motion to dismiss was fully briefed.

United Galvanizing states that discovery should be allowed because "Imperial Zinc has entered into three contracts with businesses residing within the state of Texas." (Docket Entry No. 28).  Those contracts are only relevant as to general jurisdiction, which United Galvanizing has conceded is lacking.  "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).  A district court has discretion to allow a plaintiff to conduct jurisdictional discovery, but the plaintiff must first make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). Because United Galvanizing has failed to make such a showing, it is not entitled to jurisdictional discovery. *See id.* (affirming district court's denial of jurisdictional discovery because plaintiff had failed to make a preliminary showing of jurisdiction).

IV.    **Conclusion**

Imperial Zinc lacks minimum contacts with Texas to justify the assertion of personal jurisdiction by this court.  United Galvanizing's motion for jurisdictional discovery and

extension of time to respond is denied.  Imperial Zinc's motion to dismiss for lack of

personal jurisdiction is granted.

SIGNED on October 27, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge