**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

UNITED GALVANIZING, INC.,                  §
                                            §
              Plaintiff,                    §
                                            §
v.                                          §        CIVIL ACTION NO. H-08-0551
                                            §
IMPERIAL ZINC CORP., *et al.*,              §
                                            §
              Defendants.                   §

**MEMORANDUM AND ORDER**

This diversity suit arises from the purchase of a load of "remelt" or "secondary" zinc.
Remelt or secondary zinc has been collected, remelted, and resold after previous use.  The plaintiff,
United Galvanizing, Inc., located in Houston, Texas, purchased the zinc from one of the defendants,
Richker Metals, Inc., a California company.[1]  United Galvanizing alleges that when it used part of
the zinc in the galvanizing process, the nonconforming quality of the zinc became clear.  United
Galvanizing returned the unused part of the shipment and did not pay for any of the zinc.  United
Galvanizing seeks actual and consequential damages for breach of contract, breach of warranty,
negligence, and violations of the Texas Deceptive Trade Practices Act.  Richker Metals has
counterclaimed for the unpaid contract purchase price of the zinc that United Galvanizing did not
return.

Richker Metals moved for summary judgment, (Docket Entry No. 48), United Galvanizing
responded, (Docket Entry No. 54), and Richker Metals replied, (Docket Entry No. 56).  Richker
Metals also moved to exclude damages information at trial, (Docket Entry No. 49), to which United

----

[1]  Another defendant, Imperial Zinc Corp., the manufacturer, was previously dismissed from this suit for lack
of personal jurisdiction.

Galvanizing responded, (Docket Entry No. 55), and Richker Metals replied, (Docket Entry No. 57).

Based on a careful review of the motions, responses, and reply; the parties' submissions; and the applicable law, this court grants Richker Metals's motion for summary judgment in part, finding that the summary judgment record does not, as a matter of law, support any award of consequential damages, including for lost profits. The motion to exclude is granted as to evidence of consequential damages and otherwise denied.

A status and scheduling conference will be held on **April 6, 2010, at 10:00 a.m.** in Courtroom 11-B.

The reasons for these rulings are explained below.

I.      **The Summary Judgment Evidence**

Richker Metals is a zinc scrap broker. United Galvanizing uses zinc in its galvanizing process. In moving for summary judgment, Richker Metals submitted a June 25, 2007 email from United Galvanizing's purchasing manager, Kerry Henrichsen, to Richker's Albert Vasquez, Vice President of Sales. The email stated:

> Albert,
>       Good afternoon. Can you please ship United a load of the zinc metal we discussed at lunch the other day. I would like to give a load a try? Please advise earliest delivery date.

(Docket Entry No. 48, Russ Richker Declaration, Ex. 1). Vasquez responded that his supplier was gone for the day but would "call am tomorrow and get a ship date for [Henrichsen]." (*Id.*). In his declaration, Russ Richker, president of Richker Metals, stated that one load is approximately 45,000 pounds. The price of the zinc United Galvanizing ordered was $1.5759 per pound. At that time, United Galvanizing was paying its supplier of primary (as opposed to remelted or secondary) zinc $1.7652 per pound. (*Id.*, Russ Richker Declaration ¶¶ 3–4). United Galvanizing claims that the

2

parties discussed "prime western" grade zinc, which Richker Metals disputes.  Richker's declaration points out that the price Richker Metals charged United Galvanzing was 10.7% less than it was paying its regular supplier of primary zinc.  (*Id.* ¶ 5).

Richker Metals asserts that it faxed a written confirmation of the order to United Galvanizing on June 25, 2007.  (Docket Entry No. 48, Russ Richker Declaration, Ex. 2).  Henrichsen has testified that he did not receive a written confirmation.  (Docket Entry No. 54, Kerry Henrichsen Declaration ¶ 4).  Richker Metals shipped the zinc to Houston, Texas, where it arrived at United Galvanizing's place of business on June 29, 2007.

On July 1, 2007, Henrichsen sent an email to Richker Metals stating that there was a problem with the shipment and that United Galvanizing had used 22,154 pounds of the 44,471 pounds shipped. (Docket Entry No. 48, Russ Richker Declaration ¶ 9).  According to United Galvanizing, on using the zinc, it became apparent that it was not "prime western" grade.  United Galvanizing asserts that subsequent testing of part of the shipment confirmed the deficient quality.  United Galvanizing informed Richker Metals that it was rejecting the unused portion of the zinc shipment.  Richker Metals arranged to pick up the remaining zinc on July 19, 2007.  United Galvanizing returned 22,317 pounds of unused zinc to Richker Metals.  Richker Metals invoiced United Galvanizing $34,912.49 for the 22,154 pounds of zinc it used and did not return.  (Docket Entry No. 48, Ex. 3, Russ Richker Declaration, Ex. 4).  United Galvanizing did not pay the invoice.  United Galvanizing alleges that after it rejected the zinc, Richker Metals agreed that no payment for the used portion of the shipment was due.  Richker Metals denies this allegation and asserts that it repeatedly requested payment.

In September 2007, counsel for United Galvanizing sent Richker Metals a letter demanding

3

payment for the price of testing and replacing the nonconforming zinc and for $410,032 in lost profits. The total demanded was $479,718.90. (Docket Entry No. 11, Ex. B). On October 19, 2007, Richker Metals sued United Galvanizing in California state court seeking the unpaid invoiced amount. The California court granted United Galvanizing's motion to dismiss for lack of personal jurisdiction. United Galvanizing filed this suit on February 19, 2008, asserting breach of contract and violations of the Texas Deceptive Trade Practices Act and seeking actual and consequential damages and attorneys' fees. (Docket Entry No. 1).

On April 23, 2008, United Galvanizing filed its first amended complaint to "clarify[] and add[] additional causes of action under F.R.C.P. 15(a)." (Docket Entry No. 11). The amended complaint asserted claims for breach of contract, negligence, negligent misrepresentation, deceptive trade practices, and breach of implied warranty of merchantability. (*Id.*). The complaint alleged that upon delivery, United Galvanizing had "noticed physical traits of the [delivered] zinc that led [United Galvanizing] to question the quality, purity and grade of the zinc." (*Id.* at 3). United Galvanizing sent the zinc out for testing and deemed the zinc of "insufficient quality" based on the results. (*Id.*). United Galvanizing alleged that it and Richker Metals "both agreed that [United Galvanizing] did not have to pay the invoice relating to the June 29, 2007 delivery." (*Id.*). United Galvanizing sought "actual, incidental and consequential damages," costs and attorneys' fees, and interest. (*Id.* at 8). Richker Metals answered the first amended complaint and counterclaimed for the unpaid invoice amount. (Docket Entry No. 17).

Richker Metals moved for summary judgment. (Docket Entry No. 48). In support of its motion, Richker Metals submitted the declaration of Russ Richker with the documents showing the order and shipment of the zinc, the return of part of the shipment, and the invoice for the used part

4

of the shipment.  (Docket Entry No. 48, Russ Richker Declaration).  Richker Metals also submitted

a declaration by Dr. Thomas J. Langill, technical director of the American Galvanizers Association.

(Docket Entry No. 48, Dr. Thomas J. Langill Declaration).  Dr. Langill provided an expert report

on the procedure for accepting remelted or secondary zinc by a galvanizing facility.  Dr. Langill

stated:

> United [G]alvanizing received a shipment of zinc blocks from
> Richker Metals that was remelted or secondary zinc.  Since this zinc
> is of an unknown quality, that is not meeting the minimum
> requirements for the specification for hot-dip galvanizing zinc,
> ASTM B 6, the galvanizer must determine the quality of the zinc
> material before adding it to his galvanizing kettle.  In this instance,
> United Galvanizing did not determine the quality of the zinc blocks
> before adding them to its galvanizing bath.  Subsequent quality issues
> with the galvanizing bath are solely the responsibility of the
> galvanizer, United Galvanizing, for adding zinc of an unknown
> quality to their galvanizing kettle.  This was not the first such
> occurrence of adding unknown quality zinc to their galvanizing
> operation and the previous incident also resulted in a quality issue for
> United Galvanizing.

(*Id.*, Ex.1).

Richker Metals also attached to its summary judgment motion all the documents it had

received in response to a subpoena issued to U.S. Zinc, Inc., (Docket Entry No. 48, Declaration of

Jonathan G. Gabriel, Ex. 1), excerpts from Henrichsen's deposition, (Docket Entry No. 48,

Appendix, Document 4), and one page of Raymond Lynch's deposition, (*Id.*, Document 5).  In

moving for summary judgment, Richker Metals argued that the undisputed facts showed that there

was an enforceable written contract for the purchase of the remelt zinc; that under § 2.201(2) of the

Texas Business and Commerce Code, Richker Metals had ten days to object and did not; that under

§ 2.606(1)(c), United Galvanzing had accepted half the zinc by using it; that after such acceptance,

United Galvanizing could not reject the zinc under § 2.607; that United Galvanizing could not

recover consequential damages; that United Galvanizing had, as a matter of law, acted unreasonably by failing to test the zinc before using it; and that United Galvanizing had presented insufficient evidence of causation or damages, including lost profits.  The only evidence of lost profits was Lynch's deposition testimony that the $410,032 figure was based on "lost invoicing."  Lynch testified that the figure was calculated by taking the difference between the first ten days of the previous six months and the first ten days of the month when the nonconforming zinc had interrupted production for the time required to return the galvanizing kettle back to specifications. Lynch testified that the $410,032 was the amount the invoices were "down" in the first ten days of the month.  He also testified that the figure was not a lost profits calculation and that no one at United Galvanizing had calculated the lost profits.  (Docket Entry No. 48 at 8–9).

In response to Richker Metals's motion for summary judgment, United Galvanizing submitted a declaration by Kerry Henrichsen, the purchasing manager at United Galvanizing, and a transcript of Henrichsen's 2008 deposition.  The declaration states, in pertinent part, that Henrichsen was the "point of contact for all purchase orders of United Galvanizing" and that he had "never seen, read or executed" the written confirmation of the contract Richker Metals alleges it sent.  (Docket Entry No. 54, Ex. A).  In its brief in response to the motion, United Galvanizing argued that the following fact questions were present:

1.  Whether the parties had only entered into an oral agreement or whether United Galvanizing had also received a written confirmation under § 2.201 of the Texas Business and Commerce Code.  United Galvanizing denied that it received the written confirmation.

2.  Whether United Galvanizing had accepted the zinc and, if so, whether United Galvanizing timely rejected it as nonconforming, under §§ 2.602, 2.606, 2.608, and 2.609 of the Texas Business

and Commerce Code.  United Galvanizing argued that it had not accepted the zinc and instead justifiably rejected it, or had revoked its acceptance with timely notice to Richker Metals.

3.  Whether United Galvanizing acted reasonably in failing to test the zinc before using it. United Galvanizing referred to an opinion of an expert witness in a prior filing that it had acted consistent with industry custom.

4.  Whether the nonconforming zinc caused United Galvanizing actual, incidental, and consequential damages.  (Docket Entry No. 54).  In response to Richker Metals's argument that there was insufficient evidence of causation or lost profits, United Galvanzing stated: "the court need look no further than the pleadings, the record and evidence already provided herein to find that factual issues regarding liability, causation and damages still exist."  (*Id.* at 6).

## II.    The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536,

540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)), *petition for cert. filed*, 77 U.S.L.W. 3657 (U.S. May 22, 2009). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.   Analysis

The record shows disputed fact issues material to determining whether United Galvanizing had specified zinc of a certain quality or whether the price alone made clear that the zinc was secondary or remelt of unspecified quality. The record also shows disputed fact issues material to determining whether Richker Metals sent a written confirmation and whether United Galvanizing accepted the zinc. The record also discloses fact issues material to determining whether United

8

Galvanizing acted reasonably in using part of the zinc shipped without first testing it, given that it was remelt or secondary zinc. United Galvanizing did not attach the report of its expert to its response to Richker Metals's summary judgment motion. United Galvanizing did provide a citation to an earlier filing that included this expert report. (Docket Entry No. 43, Expert Report of John F. Malone at 8). United Galvanizing also presented summary judgment evidence that it did not believe it was receiving secondary zinc of unknown quality. The expert opinion submitted by Richker Metals states that it is unreasonable to use secondary zinc before testing to determine quality because the grade of secondary zinc is unknown. But there is no evidence that it is necessary or customary to test zinc that is represented to be of a particular, known grade. The record therefore gives rise to fact issues as to whether United Galvanizing accepted the zinc by using it (without testing) and timely and reasonably revoked the acceptance, or whether United Galvanzing timely rejected the zinc.

United Galvanizing's amended complaint seeks "actual, incidental and consequential damages" arising out of Richker Metals's delivery of allegedly nonconforming zinc. In its motion for summary judgment, Richker Metals argues that United Galvanizing "will not be able to establish any damages, and, therefore, [United Galvanizing] cannot present a claim as a matter of law." (Docket Entry No. 48 at 8). In particular, Richker Metals focuses on United Galvanizing's alleged lack of competent evidence showing lost profits. (*Id.* at 8–9). Richker Metals also argued that United Galvanizing could not show causation. (*Id.* at 10).

United Galvanizing's response to this part of Richker Metals's summary judgment motion stated as follows:

In its motion for summary judgment, Defendant argues that, as a matter of law,

9

> Plaintiff (1) did not mitigate its damages; (2) has no evidence of damage; and (3) has no evidence that Defendant caused the damage. Again, the court need look no further than the pleadings, the record and evidence already provided herein to find that factual issues regarding liability, causation and damages still exist. Did Defendant Deliver the grade of zinc it promised it would? Were Plaintiff's actions reasonable and consistent with those commonly accepted within the trade once it took possession of the zinc? After considering all of the summary judgment evidence, the Court must find that Plaintiff has raised a genuine issue of material fact as to each of these issues.

(Docket Entry No. 54 at 6–7).

United Galvanizing refers to the "pleadings, the record and evidence." A plaintiff must go beyond allegations in its pleadings to raise a genuine issue of material fact; United Galvanizing's reference to "the record and evidence" is insufficient. *See Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007); *see also Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) ("[The court is] not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence."); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994))); *Boudreaux v. Smith Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) ("This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" (quoting *Little*, 37 F.3d at 1075)).

Even assuming that the "evidence provided herein" refers to all the evidence submitted with United Galvanizing's response to the summary judgment motion, it does not raise fact issues as to damages. United Galvanizing submitted only two pieces of evidence with its response to the summary judgment motion: Henrichsen's declaration and his deposition. United Galvanizing cited

Henrichsen's declaration for the proposition that Richker Metals's written confirmation was never received, (Docket Entry No. 54 at 2); cited Henrichsen's declaration and "generally, Henrichsen's deposition" as support for finding a disputed fact issue as to whether United Galvanizing had accepted the zinc, (*Id.* at 5); referred to an opinion by an expert retained by United Galvanizing that using the zinc without testing it first was consistent with customary industry practice, (*Id.*); and cited Henrichsen's deposition testimony as support for Richker Metals's alleged representation that the zinc would be "equal to prime western specs," (*Id.* at 6).   None of these record references support the presence, extent, or calculation of any damages.

As noted, the expert opinion United Galvanizing referred to is not attached to the summary judgment response.  United Galvanizing did provide a citation to the earlier filing that contained that expert report.  (Docket Entry No. 43, Expert Report of John F. Malone at 8).  In the report, however, the expert did not address the extent or calculation of any damage to United Galvanizing from using the zinc supplied by Richker Metals.

United Galvanizing did not cite any specific testimony from Henrichsen's deposition in its summary judgment response.  Even looking "generally" to Henrichsen's deposition, he disavowed knowing about United Galvanizing's damages.  Henrichsen testified that it was "not in [his] realm of . . . responsibility" to know whether there was a loss over the production period or whether United Galvanizing needed to turn away work.  Henrichsen stated that "Raymond" would know that information.  (Docket Entry No. 54, Ex. B, Deposition of Kerry Henrichsen at 82).  Henrichsen also testified that United Galvanizing "would not have any documentation to indicate whether [it] lost work" and that he did not know how much zinc had to be ordered to replace the zinc sent back to Richker Metals.  (*Id.* at 78–81, 82:25–83:1).  This testimony does not support United Galvanizing's

11

damages claim.

The United Galvanizing documents attached to Richker Metals's motion for summary judgment do address damages. The documents included one entitled "Dollars in damage from bad zinc." This document lists dollar amounts for "testing," "new preflux," "acid disposal," "new acid," and "Lost Invoicing." The documents also include invoices for testing and disposal, a "2007 Production Report," and a "2007 Production Report Pricing" chart. United Galvanizing did not refer to these documents in its summary judgment response and did not explain their relevance to the existence or amount of damages.

The briefing in this case is similar to that in *Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003). In *Malacara*, the district court granted summary judgment to the defendant on the plaintiff's fraud claim because the plaintiff failed to address the argument or point to record evidence to show injury, an element of the fraud claim. *Id.* at 404. On appeal, the plaintiff pointed to evidence of damages in the plaintiff's deposition, which the defendant had submitted as an exhibit to the district court. *Id.* at 405. The plaintiff had not mentioned this evidence in his brief to the district court. *Id.* The Fifth Circuit held that the district court properly dismissed the claim, stating that "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Id.* In *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.8 (5th Cir. 1992), the Fifth Circuit rejected its earlier view in *Higgenbotham v. Ochsner Foundation Hospital*, 607 F.2d 653 (5th Cir. 1979), that the court must consider all evidence in the summary judgment record, even when not "singled out," if the evidence is not a "needle in a paper haystack," *id.* at 656–57. The *Skotak* court emphasized that "Rule 56 does not impose upon the district court a duty to sift through the

record in search of evidence to support a party's opposition to summary judgment."  Instead, Rule

56 "allocates that duty to the opponent of the motion, who is required to point out the evidence,

albeit evidence that is already in the record, that creates an issue of fact."  953 F.2d at 915 n.7.

      Other cases are similar in holding that a plaintiff resisting summary judgment must do more

than simply assert that there is evidence somewhere in the summary judgment record to raise a fact

issue.  *See, e.g.*, *Steed v. Grain Dealers Mut. Ins. Co.*, 145 F. App'x 967, 968 (5th Cir. 2005)

(summary calendar) (per curiam) (unpublished); *Smith ex rel. Estate of Smith v. United States*, 391

F.3d 621, 625 (5th Cir. 2004); *Alves v. ConocoPhillips Co.*, No. H-07-0986, 2008 WL 447705 (S.D.

Tex. Feb. 19, 2008); *see also, e.g.*, *Carmen v. San Francisco United Sch. Dist.*, 237 F.3d 1026, 1029

(9th Cir. 2001) (holding that Rule 56 requires that a genuine issue of fact be present both in the

record and set forth in the summary judgment response); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d

664, 672 (10th Cir. 1998) (holding that the plaintiff failed to meet her summary judgment burden

because she failed to specifically reference facts in the record to support her opposition to the

defendant's motion for summary judgment, noting that the court was "wary of becoming advocates

who comb the record of previously available evidence and make a party's case for it"); *L.S. Heath

& Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 567 (7th Cir. 1993) (concluding *Skotak* and other

cases were persuasive and holding that "a district court need not scour the record to determine

whether there exists a genuine issue of fact to preclude summary judgment" but "can rely upon the

non-moving party to show such a dispute if one exists"); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d

1300, 1307 (5th Cir. 1988) (rejecting the notion that "the entire record in the case must be searched

and found bereft of a genuine issue of material fact before summary judgment may be properly

entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs,

hunting for truffles buried in briefs.").

The record includes United Galvanizing's supplemented disclosures, filed in August 2009. (Docket Entry No. 53). United Galvanizing discussed this supplementation in responding to Richker Metals's motion to preclude damages evidence. (Docket Entry No. 56). The supplemented disclosures state that United Galvanizing had spent $72,389.52 in "cover" by purchasing new zinc from U.S. Zinc. The supplemented disclosure also states that United Galvanizing incurred the following amounts in incidental damages: testing ($9,360.00); new preflux ($35,934.60); acid disposal ($14,853.00); and new acid ($9,539.30). These amounts correspond to the invoices in the summary judgment record showing these purchases. Accepting this evidence, there is still no competent summary judgment evidence to support a claim for consequential damages, including lost profits.

There is scant evidence as to lost profits and none that is part of the summary judgment record. Raymond Lynch testified in his deposition stating that no one at United Galvanizing had calculated lost profits. Lynch acknowledged that the $431,032.00 figure United Galvanizing sent in the demand letter to Richker Metals was "not actually what we're asking for." (Docket Entry No. 55, Ex. 2, Deposition of Raymond Lynch at 99:19–:25; 100:1–:10). Instead, this figure was only a rough estimate of "how much we were down" in the first ten days of the month from "lost invoicing." (*Id*. at 100:16–25). In the supplemented disclosure, United Galvanizing stated that the lost profits were $61,504.80. (Docket Entry No. 53, Ex. A). This figure is not only not referred to in the summary judgment response; it is wholly unexplained and unsupported by the summary judgment evidence. There is no explanation of this figure. There is no connection between this figure and any invoices or other documents in the summary judgment record. United Galvanizing

14

has not submitted competent evidence of consequential damages or of the method for calculating them.

Although Texas law does not require that lost profits be precisely calculated, "the injured party must do more than show that it suffered some lost profits"; that party must show the amount "by competent evidence with reasonable certainty." *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). At a minimum, an estimate must be "based on objective facts, figures, or data from which the lost-profits amount may be ascertained." *Id.* United Galvanizing has submitted no evidence, much less evidence approaching this standard.

There is no summary judgment evidence properly before this court that raises a fact issue material to determining whether the alleged nonconforming quality of the zinc United Galvanizing obtained from Richker Metals caused United Galvanizing to suffer any consequential damages or, if so, in what amount. Richker Metals's motion for summary judgment is granted as to United Galvanizing's claim for lost profits. Richker Metals's motion for summary judgment is denied as to United Galvanizing's motion for "cover" damages and incidental damages for testing, new preflux, acid disposal, and new acid.

The motion to exclude damages information at trial is based on late disclosure of the witness knowledgeable about the damages United Galvanizing claims. In its response, however, United Galvanizing points out that in depositions taken during the discovery period, the name of the individual knowledgeable about damages was provided. In addition, the invoices and documents showing what is identified as the purchase of replacement zinc, the testing of the zinc received from Richker Metals, and the purchase of acid were produced to Richker Metals during discovery and are attached to its summary judgment motion. The motion to exclude evidence of damages at trial is

15

granted as to the evidence of lost profits or other consequential damages and denied as to the evidence of "cover" and incidental damages.

## IV.     Conclusion

Richker Metals's motion for summary judgment is granted as to United Galvanizing's claim for lost profits.   Richker Metals's motion for summary judgment is denied as to United Galvanizing's motion for "cover" damages and incidental damages for testing, new preflux, acid disposal, and new acid.   The motion to exclude damages information at trial is granted as to the evidence of lost profits or other consequential damages and denied as to the evidence of "cover" and incidental damages.

A status and scheduling conference will be held on **April 6, 2010, at 10:00 a.m.** in Courtroom 11-B.

SIGNED on March 25, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

16